UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DWONKA ELAINE COMPTON, <br><br> Plaintiff, <br><br> v. <br><br> LOWE'S COMPANIES, INC., <br><br> Defendant. | Case No. 08-cv-809-JPG |

### MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Lowe's Companies, Inc.'s Motion for Summary Judgment (Doc. 52) and Memorandum (Doc. 53) in support thereof. Plaintiff Dwonka Elaine Compton (hereinafter "Compton") filed a *pro se* Response (Doc. 54) thereto, to which Lowe's Companies, Inc. filed a Reply (Doc. 55). Essentially, Lowe's Companies, Inc. argues it is not the proper defendant to this litigation. This is not the first time this issue has been raised — in several of its pleadings, Lowe's Companies, Inc. informed Compton and the Court that Lowe's Home Centers Inc. was Compton's employer and is the proper entity to this litigation. Lowe's Companies, Inc. maintains that Compton's repeated failure to substitute defendants warrants its dismissal from this matter with prejudice.

It is apparent from Compton's response that she was confused about the relationship of Lowe's Companies Inc. and Lowe's Home Centers Inc. and their involvement with her case. More importantly, it is apparent from the briefing of the summary judgment motion that Lowe's Home Centers Inc., which does not object to being added as a defendant, *see* Doc. 53, p. 1 n.1, is the proper party to this litigation. For these reasons, as well as the fact that this case is ripe for adjudication on its merits, the Court **GRANTS** the instant motion (Doc. 52), whereby the Court **DIRECTS** the Clerk of Court to **ADD** Lowe's Home Centers Inc. as a party defendant,

**DISMISSES** Lowe's Companies, Inc. **with prejudice,** and **DIRECTS** the Clerk of Court to enter judgment accordingly.

This matter also comes before the Court on Defendant Lowe's Home Centers Inc.'s (hereinafter "Lowe's" or "the company") Motion for Summary Judgment (Doc. 56) and Memorandum (Doc. 57) in support thereof. Compton filed a *pro se* Response (Doc. 58) thereto, to which, Lowe's filed a Reply (Doc. 60). For the following reasons, the Court **GRANTS** said summary judgment motion.

## BACKGROUND

### I.     Facts

In analyzing a motion for summary judgment, the reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court, construing the evidence and all reasonable inferences in the light most favorable to Compton, finds as follows:

In November 2006, Lowe's hired Compton, an African-American female, to work as the lone credit and special order sales coordinator in its Belleville, Illinois store. During her employment with Lowe's, Compton's immediate supervisor was Administrative Manager Rick Hedge (hereinafter "Hedge"); meanwhile, the store manager throughout her tenure was Anthony "Ange" Picillo (hereinafter "Picillo"), who had authority over the entire store and its employees. Around the time of her hiring, Compton received Lowes' Human Resources Performance Management Guide, which promulgated the company's expectations relating to workplace behavior and job performance. The Human Resources Performance Management Guide provided for Class "A," "B," and "C" violations; for example, if an employee committed a Class "A"

violation such as insubordination, she was "normally subject . . . to immediate termination on the first occurrence." Doc. 57-3, p. 19.

It did not take long for Compton to run into disciplinary problems at Lowe's. Because she clocked in prior to the start of her shift on February 20, 2007, Hedge gave her a verbal performance report. A few weeks later, Compton reported to Lowe's that Hedge was not treating her fairly. On March 20, Compton failed an audit conducted by the company's regional operations manager. Hedge thereafter gave her a written performance report for failing this audit and for failing to timely complete an unrelated, mandatory training. Like her verbal reprimand, Compton disputed this written report; specifically, she e-mailed Picillo and the regional operations manager and explained that she was being "singled out" for discipline. Doc. 57-4. Then, on April 16, Compton received a second written performance report from Hedge for failing to maintain a sheet that tracked the status of her daily tasks. Once again, she complained about the issuance of the report, this time to the operations manager and the regional operations manager.

Up to this point, none of the reprimands that Compton received had resulted in demotion, increased or decreased duties, or negative consequences to her pay, benefits or job status. Furthermore, up to this point, none of Compton's "grievances" mentioned that Hedge was acting on the basis of race or gender.

Compton's employment with Lowe's came to a head on July 27, 2007. When Compton arrived for her shift on that date, she learned of a muriatic acid spill that occurred the previous night. Compton, who was six months pregnant at the time, expressed concerns to Picillo about working so soon after the spill. Picillo explained that the building, which was full of other employees and customers by this time, had been reviewed and cleared by the fire department. He specifically told Compton not to leave the building. Picillo's assurances and direct order did not trump Compton's fear for the safety of her baby, and she ultimately left the store until her next

3

scheduled shift.  No other employees left the store or refused to enter the building that day and there were at least five pregnant women employed by the Belleville Lowe's at the time.

When Compton returned to work on July 30, she presented Picillo with a doctor's note excusing her from work on July 27, which she obtained *after* she left the store that day.  In other words, Picillo was unaware of the doctor's note on July 27 because it retroactively excused her from work.  Picillo had Compton give a written statement that confirmed she abandoned her shift as the sole credit and special order sales coordinator.  Picillo classified this conduct as insubordination, again a Class "A" violation according to the Lowe's Human Resources Performance Management Guide, and immediately terminated her employment.  Shortly thereafter, Compton sought legal recourse.

## II.     Relevant Procedural Posture

On August 9, 2007, Compton timely filed a charge of discrimination form with the Illinois Department of Human Rights and Equal Employment Opportunity Commission.  Following completion of the administrative process, Compton received a right to sue notice.

On November 14, 2008, Compton filed a lawsuit with this Court, alleging employment discrimination against Lowe's under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C. § 2000e, *et seq*.  Specifically, Compton states claims of race discrimination, gender discrimination, and retaliation.  After filing an Amended Complaint (Doc. 49), which remains the operative complaint in this litigation, Lowe's moved for summary judgment on all claims.

## ANALYSIS

## I.     Motions for Summary Judgment Generally

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must typically present specific facts supported by the record to show that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## II. Race and Gender Discrimination

Title VII prohibits discrimination on the basis of, *inter alia*, race or gender: "It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1) (2006).

### A. "Direct" Method

To withstand a motion for summary judgment, a Title VII plaintiff may present "direct" proof of discrimination through direct or circumstantial evidence. *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001); *Debs v. Ne. Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). Historically, direct evidence has been viewed as evidence that is within a witness's personal knowledge and does not require drawing an inference to support the proposition for which it is offered. *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 903 (7th Cir. 2006). Meanwhile, circumstantial

evidence has been viewed as evidence requiring an inference. *Id*. This distinction is vague and irrelevant; any evidence supporting an inference of discrimination is sufficient to withstand summary judgment under the direct method. *Id.*

Even if a plaintiff puts forth direct evidence of discrimination, she must relate such evidence to an adverse employment action. *Frobose v. Am. Sav. and Loan Ass'n of Danville*, 152 F.3d 602, 617-18 (7th Cir. 1998); *see Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 272 (7th Cir. 2004). To establish such an adverse employment action, a plaintiff must show a "quantitative or qualitative change in the terms or conditions of [her] employment that is more than a mere subjective preference." *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003); *see Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002). Of course, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Murray v. Chi. Transit Auth.*, 252 F.3d 880, 888 (7th Cir. 2001) (citation and internal quotations and ellipsis omitted). The Seventh Circuit Court of Appeals has specifically held that negative performance evaluations and oral or written reprimands do not rise to the level of an adverse employment action if they do not implicate tangible job consequences. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). *See, e.g., Oest v. Ill. Dept. of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001).

Here, it is undisputed that Compton's ultimate termination was an adverse employment action; in fact, the abovementioned statute explicitly references such action as contemplated by Title VII. With that said, the *only* admissible evidence of race discrimination is an extremely derogatory statement uttered by Hedge to Compton's husband in March 2007.[1] While the Court

---

[1] Compton has not put forth any direct evidence of race discrimination or any evidence whatsoever of gender discrimination that satisfies the evidentiary requirements of Federal Rule of Civil Procedure 56(c).

6

does not dispute the reprehensibility of Hedge's statement, it was Picillo, not Hedge, who fired Compton. Moreover, the record does not reasonably support an inference that Picillo acted upon Hedge's comment because there is nothing indicating that Picillo was even aware that it had been made. Assuming *arguendo* Picillo was aware of Hedge's comment, the passage of more than four months between its utterance and Compton's termination dispels any causal connection between the two. If anything, the record demonstrates that Picillo did not harbor racist or sexist sentiments towards Compton and, as discussed *infra*, that he terminated Compton solely because she insubordinately left her shift on July 27, 2007.

Hedge's comment also serves as circumstantial evidence of discrimination with respect to the verbal performance report and two written performance reports issued to Compton, especially in light of their timing and the fact that Hedge issued them. It is difficult for the Court to discern the admissibility or weight of this evidence because it was only referenced in passing during Cobin's deposition. No matter, as *Smart* and its progeny make clear that the verbal and written reports do not constitute adverse employment actions under Title VII because Compton, according to her deposition testimony, did not suffer tangible job consequences as a result of their issuance.[2] *See, e.g.*, Doc. 57-2, p. 24 ("Q: And as you said, you weren't, there wasn't necessarily any stigma to being disciplined [for transgressions that result in written reports, including your first written report]? Compton: Well, not for the employees [other than termination] . . . ."). For these reasons, Compton cannot pursue her claims of race and gender discrimination under the "direct" method of proof.

---

[2] During her deposition, Compton testified that Hedge denied her requests to adjust shifts by thirty minutes so that she could meet with her OB/GYN. The Court, however, does not find that this unremarkable inconvenience rises to the level of a tangible job consequence.

B.     **"Indirect" Method**

A Title VII plaintiff may also proceed under the "indirect," burden-shifting mechanism outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under this approach, a plaintiff must first establish a *prima facie* case of discrimination by presenting evidence of the following: "(1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside of the class more favorably.  *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 790 (7th Cir. 2007); *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007).

A plaintiff's successful demonstration of each of the foregoing elements creates a rebuttable presumption of discrimination.  *Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003).  The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action.  *Boumehdi,* 489 F.3d at 790; *Grayson*, 317 F.3d at 748.  If the defendant is able to provide evidence of such a reason, the burden returns to the plaintiff to show that the articulated reason is actually pretext.  *Boumehdi,* 489 F.3d at 790; *Grayson*, 317 F.3d at 748.  At the pretext stage, the plaintiff need not provide evidence of the defendant's discriminatory motive so long as she provides substantial evidence from which a reasonable trier of fact could find that the proffered reason was not genuine.  *Allen v. Chi. Transit Auth.*, 317 F.3d 696, 699 (7th Cir. 2003) (citing as examples *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 146-49 (2000); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 458 (7th Cir. 1999)).  It is important to note that the ultimate burden of persuasion remains at all times with the plaintiff.  *Reeves*, 430 U.S. at 143 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In the case at bar, there is no dispute that, as an African-American and a female, Compton is a member of protected classes.  There is also no dispute that the termination of Compton's

employment represents an adverse employment action taken by Lowe's.[3]  The question then becomes whether Compton had met Lowes' legitimate business expectations prior to her termination.  Because this second prong of the *prima facie* case is "inextricably intertwined" with any discussion of pretext, the Court will analyze both issues together.  *Boumehdi*, 489 F.3d at 790.

      A review of the record makes clear that Compton did not meet Lowes' legitimate business expectations.  Although Compton had avoided discipline for more than three months before July 27, 2007, her direct insubordination on that date warranted severe discipline, including and up to termination.  This should not have surprised Compton.  Early in her tenure with Lowe's, Compton received the company's Human Resources Performance Management Guide, whereby she learned and understood that a Class "A" violation, such as insubordination, would normally subject her to termination on its first occurrence.  Black's Law Dictionary generally defines insubordination as "[a] willful disregard of an employer's instructions" or "[a]n act of disobedience to proper authority."  *Black's Law Dictionary* (9th ed. 2009); *Culver v. Gorman & Co.*, 416 F.3d 540, 548 (7th Cir. 2005).  Despite being specifically told by the manager of the entire store *not* to leave the building on July 27, Compton walked out at the beginning of her shift and did not return until three days later.  The Court can think of no better example of the willful disregard or disobedience that defines insubordination.  While Compton's concerns for her child were undoubtedly legitimate upon first entering the store, they should have been sufficiently quelled by the presence of customers and employees, likely including other pregnant women, the clean bill of health from the fire department, and Picillo's assurances and direct order.  Perhaps more importantly, the absolute classification of insubordination as a Class "A" offense leaves little room for the Court to

---

[3]As discussed in greater detail *supra*, the verbal performance report and two written performance reports do not represent adverse employment actions because they did not result in any tangible job consequences to Compton

carve out an exception thereto.[4] *See Ajayi v. Aramark Bus.Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003) ("[C]ourts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions.").

Furthermore, Lowe's had a legitimate, non-discriminatory reason for terminating Compton's employment, namely the significant business interest of ensuring that its employees do not abandon their shifts immediately upon arriving at work. This interest is only intensified when one considers that Compton was the *only* employee to leave her post on July 27, 2007, and that Compton was the *only* credit and special order sales coordinator of the company's Belleville, Illinois, branch.

Finally, even if the foregoing analysis swayed in Compton's favor, she cannot point to a similarly situated employee as required by *Boumehdi*. To be similarly situated, an employee must be "directly comparable to [the Title VII plaintiff] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002); *accord Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 791 (7th Cir. 2007). "Different employment decisions, concerning different employees, made by different supervisors . . . sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). In fact, "a similarly situated employee *must* have been disciplined, or not, by the same decisionmaker who imposed an adverse employment action on the plaintiff." *Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) (emphasis added).

Here, again, no other Lowes' employee refused to enter the Belleville store or abandoned their shift on July 27, 2007. Moreover, the record does not indicate *any* other employee, let alone one that was Caucasian or male or performed the same job duties as Compton, *ever* committed

---

[4]Compton's retroactive doctor's note is of no consequence because it does not change the fact that Compton willfully disregarded and disobeyed Picillo's direct order not to leave the store.

insubordination or any other Class "A" violation without having their employment terminated by Picillo. For these fundamental reasons, Compton does the meet the similarly situated requirement espoused in *Boumehdi*.

Put simply, no genuine issue of material fact exists as to Compton's claims for race and gender discrimination; as such, judgment shall be entered in favor of Lowe's and against Compton on these claims.

## III.   Retaliation

The anti-retaliation provision of Title VII makes it unlawful for an employer to "discriminate against" an employee "because [s]he has opposed any practice made an unlawful employment practice" by the statute or "because [s]he has made a charge, testified, assisted, or participated in [a relevant] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a) (2006). To ultimately prove a claim for retaliation, a plaintiff must show the following: "(1) that she engaged in an activity protected by Title VII; (2) that she suffered an adverse action taken by the [defendant]; and (3) [that there is] a causal connection between the two, under either the direct or indirect method of proof." See *O'Neal v. City of Chi.*, 588 F.3d 406, 409 (7th Cir. 2009).

### A.   Direct Method

Assuming *arguendo* Compton engaged in statutorily protected activity when grieving about Hedge, she cannot directly demonstrate a causal connection between such activity and her termination, again the only adverse employment action taken by Lowe's. There is no direct evidence that Picillo fired Compton because she complained about Hedge; meanwhile, the only circumstantial evidence that supports such a proposition is Picillo's awareness of the grievances and the "brief" two-month time period between the last grievance and Compton's termination. But, the mere fact that Picillo may have been aware of the grievances, only one of which called Hedge a racist and chauvinist, does not in and of itself create a causal bridge to her termination.

11

Moreover, the probative value of Picillo's awareness is severely undercut when one considers that neither Compton nor the record seriously question his motivation and basis for firing her. And, while the passage of a little more than two months between the final grievance and termination may smack of suspicious timing, *Parkins v. Civil Constructors of Ill.,Inc.*, 163 F.3d 1027, 1039 (7th Cir.1998), the egregiousness of Compton's intervening insubordination cannot be ignored. Any pursuit of a direct theory of retaliation must therefore fail.

    B.    **Indirect Method**

In order to prevail on a claim for retaliation using the indirect, burden-shifting mechanism, a Title VII plaintiff must first establish a *prima facie* case by showing that (1) she engaged in a statutorily protected activity, (2) she performed her job according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated her less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 559 (7th Cir. 2004); *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir. 2004). Notably, there is no need to show a causal connection using the indirect method. *Rhodes*, 359 F.3d at 508 (citing *Haywood v. Lucent Techs.*, 323 F.3d 524, 531 (7th Cir. 2003). If the plaintiff demonstrates her *prima facie* case, the burden shifts and re-shifts as outlined in the discussion of Compton's indirect discrimination claims. *Hudson*, 375 F.3d at 559; *Rhodes*, 359 F.3d at 508**.**

Here, the Court may make short work of any attempt to establish a retaliation claim under the indirect method. The Court has already discussed and will not repeat how and why Compton did not meet Lowes' legitimate business expectations. Further, Compton cannot make any "similarly situated" showing because she was fired for her insubordination, not because she made grievances against Hedge, and no other employee has been cited as being insubordinate or committing a Class "A" violation. For these reasons, Compton cannot make out a retaliation

claim under the indirect method; thus, she has failed to present a genuine issue of material fact regarding her retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court, *inter alia*, **GRANTS** Lowes' Motion for Summary Judgment (Doc. 56), whereby the Court **DISMISSES** all of Compton's claims **with prejudice**. In addition, the Court **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: February 8, 2011**

                                                  s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**